# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
    **Plaintiff,**

    **v.**                                            **Case No. 09-CR-141**

**RONALD JORDAN**
    **Defendant.**

## SENTENCING MEMORANDUM

Defendant Ronald Jordan pleaded guilty to possession of a firearm as a felon, 18 U.S.C. § 922(g)(1), possession of marijuana with intent to distribute, 21 U.S.C. § 841(a)(1) & (b)(1)(D), and possession of a firearm in furtherance of a drug trafficking offense, 18 U.S.C. § 924(c), and I set the case for sentencing. In imposing sentence, I first calculated defendant's advisory sentencing guideline range, then selected the ultimate sentence under all of the factors set forth in 18 U.S.C. § 3553(a). See United States v. Panice, 598 F.3d 426, 441 (7th Cir. 2010).

## I. GUIDELINES

On the felon in possession count, defendant's pre-sentence report ("PSR") set a base offense level of 20, as he had previously been convicted of a drug trafficking offense, U.S.S.G. § 2K2.1(a)(4)(A); then added 4 levels because the firearm had an obliterated serial number, § 2K2.1(b)(4)(B), and 4 levels because he possessed the gun in connection with another felony offense, i.e. marijuana trafficking, § 2K2.1(b)(6), for an adjusted level of 28. On the drug count, the PSR set a base level of 24, as the offense involved 11 pounds of marijuana and 8.73 grams of crack cocaine. U.S.S.G. § 2D1.1(c)(7); see also U.S.S.G. § 2D1.1(c) cmt. n.10(D). The report declined to impose a 2 level firearm enhancement under U.S.S.G. § 2D1.1(b)(1),

as defendant had also been convicted under 18 U.S.C. § 924(c). See U.S.S.G. § 2K2.4 cmt. n.4. The PSR grouped these two counts pursuant to U.S.S.G. § 3D1.2(c) and, following a 3 level reduction for acceptance of responsibility, U.S.S.G. § 3E1.1, set a final offense level of 25. Coupled with defendant's criminal history category of III, level 25 produced an imprisonment range of 70-87 months. The § 924(c) count carried a separate guideline range of 60 months, the mandatory minimum required by statute, running consecutively. U.S.S.G. § 2K2.4(b). Neither side objected to these calculations, which I adopted.

## II. SECTION 3553(a)

**A.     Sentencing Factors**

Section 3553(a) requires the court, in determining the particular sentence to be imposed, to consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the [advisory] sentencing [guideline] range[;]
>
> (5) any pertinent policy statement . . . issued by the Sentencing Commission[;]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The statute directs the court, after considering these factors, to impose a sentence that is "sufficient, but not greater than necessary to comply with the purposes set forth" in sub-section (a)(2): just punishment, deterrence, protection of the public, and rehabilitation of the defendant. 18 U.S.C. § 3553(a). In making this determination, the district court may not presume that the guideline sentence is the correct one, Nelson v. United States, 129 S. Ct. 890, 892 (2009), or place any thumb on the scale favoring a guideline sentence, United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007). The court is also free to reject guidelines on policy grounds, see, e.g., United States v. Pape, 601 F.3d 743, 749 (7th Cir. 2010); United States v. Corner, 598 F.3d 411, 414-15 (7th Cir. 2010) (en banc), particularly where the Sentencing Commission did not, in adopting the guideline, fulfil its "characteristic institutional role" of basing the provision on study, expertise, empirical data, or national experience, see Kimbrough v. United States, 552 U.S. 85, 109 (2007). Ultimately, the district court must make an independent determination as to the appropriate sentence, taking into account the types of sentences available, the relevant § 3553(a) factors, and the arguments of the parties. See Gall v. United States, 552 U.S. 38, 49-50 (2007). The court must then explain the chosen sentence in order to promote the perception of fair sentencing. Id. at 50.

**B.     Analysis**

   **1.     The Offense**

The police received a tip that defendant sold marijuana and possessed a firearm in his residence. On April 29, 2009, the police executed a search warrant, stopping defendant in the alley behind the residence. A search of his car turned up a marijuana blunt in the center console; defendant also had $721 on his person. During the search of defendant's home,

3

officers found a baggie containing 7.18 grams of marijuana, a cooler containing 313.84 grams of marijuana, and a digital scale. In the bedroom they found a loaded .44 caliber magnum pistol with an obliterated serial number and five corner cuts of cocaine base weighing a total of 8.73 grams.

In a post-arrest statement, defendant admitted the marijuana and the gun, stating that he had been selling marijuana for the last two months and estimating that he obtained about 11 pounds over that time. He said the cocaine was for personal use.

### 2. The Defendant

At age thirty-three, defendant had two prior convictions for drug-related conduct: cocaine delivery in 1998, for which he initially received probation but was later revoked and sentenced to 3 years in prison; and cocaine possession in 2000, for which he served 67 days in jail. However, he sustained no further convictions between 2000 and the instant offense, and had no history of violence or weapon offenses.

Defendant described a good childhood, in a two parent home, a much better upbringing than many defendants I see. He explained that he got into drugs due to the lure of easy money. His family nevertheless remained supportive, as did his girlfriend, the mother of his three young children. He had a fourth child with another woman, and he seemed to be involved in his children's lives. He graduated high school and compiled a decent work record

Defendant admitted past drug use but denied a current problem, and all of his screens on pre-trial release were negative. He complied with his other conditions of pre-trial release as well.

### 3. The Sentence

The guidelines recommended 70-87 months on the § 922(g) and § 841 counts (with the statute mandating 60 months consecutive on the § 924(c) count), but both sides suggested that a below guideline sentence would suffice. I agreed.

The guideline for the drug count was inflated by the presence of crack cocaine; treating the crack as powder cocaine, as is permitted under Spears v. United States, 129 S. Ct. 840 (2009) and Kimbrough v. United States, 552 U.S. 85 (2007), the base level would have been 14. Accepting defendant's contention that the crack was for personal use and thus excludable from the drug weight under United States v. Wyss, 147 F.3d 631, 632 (7th Cir. 1998) and like cases, the base level would also have been 14.

The firearm guideline ultimately controlled under the grouping rules, but it too had problems. First, I found that the base level of 20 under U.S.S.G. § 2K2.1(a) overstated defendant's risk with a gun. His predicate drug trafficking conviction involved no weapons or violence, rather the sale of a small amount of crack cocaine for $10. See United States v. Fogle, 694 F. Supp. 2d 1014, 1017-18 (E.D. Wis. 2010) (explaining that § 2K2.1(a) may produce a base offense level greater than necessary where the defendant's predicate conviction is a minor, non-violent drug case). Defendant had no record of violence or misuse of a weapon in his background; nor did the circumstances of this offense suggest that he posed a great risk with a gun. The gun was found in his bedroom; he was not carrying it around on his person or in his car; and the record contained no indication of use, threatened use, or intended use.

Second, the imposition of the 4 level enhancement under U.S.S.G. § 2K2.1(b)(6) for possession of the gun in connection with drug trafficking, whether or not technically deemed

5

double counting given the § 924(c) penalty, see United States v. Smith, 196 F.3d 676, 682 (6th Cir. 1999) (holding that the 4 level enhancement was premised on the same conduct as the mandatory five-year sentence under § 924(c)); United States v. Earvin, 29 F. Supp. 2d 962, 963-65 (E.D. Wis. 1998) (same), produced a sentence greater than necessary to satisfy the purposes of sentencing.

Third, defendant received a 4 level enhancement for obliterated serial number under § 2K2.1(b)(4)(B), despite the lack of any evidence that he removed the number, directed that it be removed, or even knew it had been. The Commission dispensed with a mens rea requirement for this enhancement, see U.S.S.G. § 2K2.1 cmt. n.8(b), but never satisfactorily explained why an increase of this extent should apply on a strict liability basis. Under § 3553(a), the court may appropriately distinguish between defendants who knowingly remove serial numbers or knowingly possess weapons with obliterated numbers, and defendants who lack such knowledge. Further, the Commission has significantly increased the extent of this enhancement without providing much explanation. Originally, the guideline provided for a 1 level enhancement. In 1989, the Commission increased it to 2 levels "to better reflect the seriousness of the offense." United States Sentencing Commission Guidelines Manual, Appendix C – Volume I 101 (Amendment 189). In 2006, the Commission doubled the enhancement again, to 4 levels, stating that the "increase reflects both the difficulty in tracing firearms with altered or obliterated serial numbers, and the increased market for these types of weapons." United States Sentencing Commission Guidelines Manual, Supplement to Appendix C 177 (Amendment 691). But police have developed methods to restore obliterated serial numbers in an effort to trace guns and curb gun trafficking, Rachana Bhowmik, Aiming for Accountability: How City Lawsuits Can Help Reform an Irresponsible Gun Industry, 11 J.L.

6

& Pol'y 67, 113 (2002); see, e.g., United States v. Settle, 414 F.3d 629, 633 (6th Cir. 2005), and in any event, in a case like this one with no trafficking aspect, it is hard to see why a 4 level enhancement is needed to provide just punishment. In the present case, the enhancement nearly doubled the range.

Beyond these guideline issues, I found that the 60 month § 924(c) penalty adequately accounted for the firearm aspect of the case, and that the drug trafficking aspect could be sufficiently addressed with a sentence of 15 months. The case involved a modest amount of marijuana; it appeared that defendant had been dealing for a relatively short period of time; and it did not appear that he profited extensively. Aside from the gun, I saw no other aggravating factors. If this case had involved only drug trafficking, and treating the crack like powder (or excluding the crack as possessed for personal use), the range would have been 15-21 months, with a 2 level reduction for acceptance of responsibility.

Under all the circumstances, I found a sentence of 15 months on the § 922(g) and § 841 counts, followed by the 60 month consecutive sentence required on the § 924(c) count, sufficient but not greater than necessary to satisfy the purposes of sentencing. This sentence provided just punishment given the bad combination of drugs and guns. Because it was more than twice as long as any previous sentence defendant had served, it sufficed to deter him and protect the public. I took into account in imposing this sentence defendant's cooperativeness, both on his arrest and thereafter, and the fact that he avoided brushes with the law for nearly a decade. I saw no significant correctional treatment needs. The sentence created no unwarranted disparity, given the factors discussed above. It would have been the same regardless of the specific guideline calculations on the § 922(g) and § 841 counts. See United States v. Sanner, 565 F.3d 400, 406 (7th Cir. 2009).

7

### III.  CONCLUSION

For these reasons and those stated on the record, I committed defendant to the custody of the Bureau of Prisons for 15 months on the § 922(g) and § 841 counts, running concurrently, and 60 months on the § 924(c) count, running consecutively, for a total of 75 months.  Upon release, I ordered him to serve 3 years of supervised release on each count running concurrently.  Given his lack of significant treatment needs and demonstrated ability to follow the rules in the community, over the last ten years and while on bond in this case, I found this term sufficient to ensure monitoring and legitimate employment.  Other terms and conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 16th day of September, 2010.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge